IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBIN KEMP BILES, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:12-CV-4738-D |
| VS. § | |
| § | |
| CAROLYN W. COLVIN, § | |
| ACTING COMMISSIONER, SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

<u>MEMORANDUM OPINION</u>

Plaintiff Robin Kemp Biles ("Biles") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II of the Act, 42 U.S.C. § 423(d)(1)(A). For the reasons that follow, the Commissioner's decision is affirmed.

I

On May 26, 2005 Biles filed a Title II application for a period of disability and disability insurance benefits. In her application, she alleged a disability beginning September 15, 2002, due to back surgeries, ruptured discs, broken bones, consistent swelling, arthritis, disc deterioration, degenerative disease, back and leg pain, scar tissue, and leg weakness. The Commissioner denied Biles's application administratively, and Biles requested a hearing. Following a hearing, the administrative law judge ("ALJ") issued an unfavorable decision. The Appeals Council denied Biles's request for review on November 14, 2008, and

Biles sought judicial review. The district court remanded the case for further administrative proceedings. A different ALJ conducted a hearing and again reached a decision that was unfavorable to Biles.

The ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 404.1520(a) (2013). At step one,[1] the ALJ determined that Biles had not engaged in substantial gainful activity since her alleged onset date through the date she was last insured (December 31, 2006). At step two, the ALJ found that Biles's back disorder and adjustment disorder with anxiety were severe impairments. At step three, the ALJ concluded that Biles does not have an impairment or combination of impairments that meets or medically equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Biles has the following residual capacity function ("RFC"):

> the claimant had the [RFC] to sustain work while lifting and carrying 20 pounds occasionally and 10 pounds frequently. She was able to stand/walk for 2 of 8 hours and sit for 6 of 8 hours with the option of alternating between sitting/standing for 1 minute at 30-minute intervals. The claimant was able to occasionally climb ramps and stairs, but was restricted from climbing ropes, ladders, and scaffolds. She was occasionally able to balance, stoop, kneel, crouch, and crawl. From a mental standpoint, the claimant was able to understand, remember, and [carry out] detailed but noncomplex instructions.

R. 676. At step four, the ALJ found that Biles could not perform her past relevant work as a mechanical drafter. At step five, based on the vocational expert's ("VE's") testimony, the

---

[1] Before reaching this conclusion, the ALJ found that Biles met the insured status requirements of the Act through December 31, 2006.

ALJ concluded that Biles was capable of performing other jobs existing in significant numbers in the national economy, such as cashier, entry-level gate guard, and assembler. Accordingly, the ALJ found that Biles was not under a disability at any time between September 15, 2002, the alleged onset date, and December 31, 2006, the date last insured.

Biles sought review by the Appeals Council, which denied her request, and the ALJ's decision became the final decision of the Commissioner. Biles now seeks judicial review based on the following two grounds: (1) the ALJ's RFC finding is flawed because the ALJ's underlying credibility determination is not supported by substantial evidence, and (2) the ALJ's failure to make a separate sustainability finding in conjunction with her RFC assessment prejudiced Biles.[2]

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th

---

[2]Although the opening paragraph of her brief asserts that the Commissioner's decision "is based on legal error," P. Br. 1, Biles does not contend that the Commissioner or ALJ applied an improper legal standard to evaluate the evidence.

Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id*. Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g., Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4) (2011). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per

curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id*. Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id*. The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Biles first argues that the ALJ's RFC finding is flawed because her underlying credibility determination is not supported by substantial evidence.

A

Biles maintains that the reasons cited by the ALJ in her adverse credibility determination are not supported by the record, and, in some cases, are directly contradicted by the record. Biles testified at the hearing that she was unable to work during the relevant period because of worsening pain in her lower back that severely restricted her functioning. The ALJ found that there was no objective evidence to support a finding that Biles's back disorder had worsened during the relevant period, and that the credible evidence of record did not support the degree of pain and functional restriction of which Biles complained. The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;

> however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.

R. 677.

The ALJ's decision is supported, in part, by the following reasoning: The medical evidence confirms that Biles had a history of surgical procedures on her back, including a lumbar fusion in 1985 and a laminectomy in 1991; that she had a Magnetic Resonance Imaging ("MRI") scan of her spine in 2003 that showed moderate to severe stenosis; and that Biles's treating physician, Andrea Halliday, M.D. ("Dr. Halliday"), noted that the 2003 MRI findings were remarkably similar to the findings of a 2000 MRI scan. Yet Biles continued to work until she was laid off in 2002. According to the ALJ, these facts supported the inference that Biles's back disorder did not prevent her from performing her job because she had performed it adequately from 2000 to 2002, and the 2003 MRI results did not show a deterioration in her condition when compared with the 2000 MRI results.

Biles challenges this reasoning on the ground that the ALJ failed to consider numerous accommodations that her employer made during the 2000-2002 period. According to Biles, her employer allowed her to come and go as she pleased; gave her fewer job duties, fewer hours, and more breaks; and afforded her the option to lie down on a couch in the restroom for one hour at a time, two to four times a day to rest her back or calm down if she was feeling nervous or upset. Biles asserts that she was laid off because her employer stopped making these accommodations and she could no longer perform the work without them.

Biles contends that the fact that she continued working during the 2000-2002 period does not undermine the credibility of her claim that her back condition worsened because she was able to continue working at her job only because of the accommodations. She also argues that substantial medical evidence supports her claim, citing various treatments she received during the relevant period as proof that her condition worsened.

The Commissioner responds that the ALJ's credibility determination is amply supported by the record and that the evidence does not support Biles's claim that her back condition worsened during the relevant period. The ALJ relied, in part, on the 2003 MRI results that prompted Dr. Halliday to opine that "[w]hen compared to a prior MRI from 2000, there are only minimal changes." R. 362. In addition, the ALJ noted that, despite Biles's allegation that she experienced constant and persistent back pain, neither of her physical examinations revealed any abnormalities or complications from her prior procedures. For example, on March 13, 2002 Biles complained of worsening back pain to her orthopaedic physician, Robert Hilliard, M.D. ("Dr. Hilliard"). But Dr. Hilliard's physical examination concluded that, although Biles exhibited decreased forward flexion and some tenderness bilaterally, her overall alignment was "good," there were "no signs of lumbar radiculothapy in either leg," her neurological exam was "otherwise normal," and her X-rays showed no evidence of a shift or complications. R. 394. Biles also complained of worsening back pain to Dr. Halliday in late 2003. But Dr. Halliday concluded that, although Biles experienced some tenderness in her back, there was "no diminished range of motion of the back," "no demonstrable weakness of her lower extremities," and Biles had a "good gait." R. 362.

Furthermore, the ALJ determined that the medical evidence showed that Biles's symptoms were adequately controlled by the treatment prescribed. As to Biles's arguments about the accommodations she allegedly received at work, the ALJ asked Biles during the hearing whether she had any documentation from her employer to corroborate her assertions, and Biles answered that she did not. *See* R. 877-78.

B

The court holds that the ALJ's credibility determination is supported by substantial evidence.

Biles does not dispute that the ALJ followed the correct two-step process in making her credibility determination. That process, outlined in Social Security Ruling ("SSR") 96-7p, provides, in pertinent part:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Morton v. Astrue*, 2011 WL 2455566, at *9 (N.D. Tex. June 20, 2011) (Fitzwater, C.J.); *see also Salgado v. Astrue*, 271 Fed. Appx. 456, 458-59 (5th Cir. 2008) (per curiam). In general, an ALJ's findings regarding the credibility of subjective symptom testimony are entitled to considerable judicial deference. *See Beck v. Barnhart*, 205 Fed. Appx. 207, 213 (5th Cir. 2006) (per curiam); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Patton*, 697 F.2d at 592. "Substantial evidence simply needs to be more than a mere scintilla. Not only is it less

than a preponderance, the evidence can preponderate in the claimant's favor and the ALJ's decision [can] still be supported by substantial evidence." *Morton*, 2011 WL 2455566, at *10.

Here, the conclusion that Biles challenges was reached after the ALJ discussed the evidence in the record and explained how she evaluated the evidence in making her RFC assessment. *See* R. 676-81. The ALJ considered and discussed Biles's testimony about her symptoms and daily activities, objective evidence in the form of numerous medical records taken over an extended period, inconsistencies in Biles's statements, and the opinion of a medical expert who completed medical interrogatories in 2007. The ALJ acknowledged and discussed at length Biles's allegations of pain, but she concluded that the evidence of record did not support the extent of Biles's alleged pain and functional restrictions. This is not a case where the ALJ selectively discussed only the evidence that supported her ultimate conclusion. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."). The ALJ found that Biles's testimony regarding the severity of her symptoms was not credible because medical records indicated that her back condition did not worsen appreciably during the relevant period, that her symptoms were adequately controlled by the treatment prescribed, that one of her examining physicians specifically noted that surgical intervention was not necessary and physical therapy was sufficient to address Biles's complaints of pain, and that Biles maintained a relatively active lifestyle away from work

during the relevant period. The ALJ's decision is supported by substantial evidence.[3]

IV

Biles also contends that she was prejudiced by the ALJ's failure to make a separate sustainability finding in conjunction with her RFC assessment.

A

Relying on *Wingo v. Bowen*, 852 F.2d 827 (5th Cir. 1988), Biles argues that the ALJ failed to specifically address evidence that Biles's pain and functional restrictions "waxed and waned." According to Biles, because the ALJ did not specifically address this evidence, the ALJ did not make a proper decision as to sustainability, and, as a result, the ALJ's step-

---

[3]In the briefing, the parties devote considerable attention to addressing the ALJ's finding that Biles "might have used narcotic medications improperly during the relevant period." R. 678. Biles argues that this finding is an improper conclusion for the ALJ to make because an ALJ may not rely on her own lay opinions regarding appropriate medical treatment as evidence against a claimant's credibility. Yet read in context, the ALJ's conclusion is not an improper medical conclusion. The ALJ addressed Biles's medication history only because she noted that a claimant's history of using strong narcotic medications for pain would normally weigh in the claimant's favor. But here, the ALJ determined that this factor does not strongly weigh in Biles's favor because the record contains minimal objective evidence to justify Biles's narcotics use. *See* R. 678-79. In particular, the ALJ noted that there was a pattern of physicians trying to reduce Biles's narcotics usage. In 1992 Dr. Hilliard noted: "[Biles] has been taking a fair amount of medication and I am going to try to get her off of addictive medicines." R. 391, 679. In 2003 another medical report noted that the examining physician "had a long talk with her about diminishing the amount of [the narcotic pain medication] Vicodin that she is taking." R. 276, 679. The ALJ did not use this basis as the sole (or even primary) ground for determining that Biles's assertions were not credible. Viewing the ALJ's analysis in context, it is clear that the ALJ considered the record as a whole and concluded that Biles's use of narcotic medications did not strongly support her assertions of pain and functional restrictions because her usage could have been explained by an alternative hypothesis—that she might have been using the drugs improperly. Because there is support for this hypothesis in the record, the ALJ's discussion of Biles's drug usage does not present a basis to disturb the ALJ's credibility determination.

five finding was based on an RFC that exceeds Biles's capability. The Commissioner responds that the ALJ did, in fact, make a separate sustainability finding, and, even if she did not, the ALJ was not required to make a "separate" finding. The Commissioner also contends that the ALJ's decision as to whether Biles could sustain work is supported by substantial evidence.

B

Biles's contention lacks force. In her fifth finding, the ALJ specifically ruled that "[a]fter careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the [RFC] to *sustain* work while lifting and carrying 20 pounds occasionally and 10 pounds frequently." R. 676 (emphasis added). Moreover, the ALJ stated that "[b]ased in part on the testimony of the [VE], the undersigned concludes that, through the last date insured, considering the claimant's age, education, work experience, and [RFC], the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." R. 682. The VE's testimony, which the ALJ considered and discussed, specifically addressed whether, given Biles's limitations, she would have been able to perform in another job. *See id.* Biles does not contend that the VE's opinion failed to account for any of her limitations, so there is no issue with the ALJ's reliance on it as part of her analysis. *See, e.g., Thomas v. Astrue*, 277 Fed. Appx. 350, 353 (5th Cir. 2008) (per curiam).

Biles's reliance on *Wingo* is misplaced. In *Wingo* the claimant was subject to a

combination of exertional and nonexertional limitations. *Wingo*, 852 F.2d at 830. The ALJ[4] considered medical evidence of hyperkeratosis of the feet, goiter, and possible galactorrhea tremor, but failed to consider evidence of other conditions (some of them nonexertional) of which the claimant complained and that the record reflected. *Id.* at 830-31. The Fifth Circuit held that the ALJ's decision was not supported by substantial evidence because he failed to consider the aggregate impact of her exertional and nonexertional limitations. *Id.* at 831. Here, the ALJ did not commit the error identified by the court in *Wingo* because the ALJ considered and discussed every type of limitation of which Biles complained, and the ALJ rested her conclusion on the entire record rather than on a mechanical application of the vocational guidelines. Furthermore, it is clear that the ALJ's decision is based in part on her adverse credibility determination. This, in turn, undermines Biles's reliance on her own testimony that, according to Biles, demonstrates that her pain and functional restrictions waxed and waned. As discussed *supra* in § III(B), the ALJ's adverse credibility determination is supported by substantial evidence, so the ALJ did not err by discounting Biles's allegations of her pain and functional restrictions at their most extreme degree. Biles has therefore failed to show reversible error on this ground.

---

[4]The opinion in *Wingo* discusses the error of the Secretary of Health and Human Services rather than of the ALJ. But the ALJ's decision rested on the same mistake, and it is clear in context that the Fifth Circuit's analysis applies to the ALJ's decision in the same way. *See Wingo*, 852 F.2d at 829, 830.

* * *

Accordingly, for the reasons explained, the Commissioner's decision is AFFIRMED.

January 14, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE